UNITED STATES DISTRICT COURT                     O
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| JIEA M RUTLAND-SIMPSON, | § | |
| | § | |
| Petitioner, | § | |
| v. | § | CIVIL ACTION NO. M-12-158 |
| | § | |
| ELI LILLY AND COMPANY, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court is Eli Lilly and Company's ("Defendant") motion for summary judgment and supporting memorandum.[1]  After considering the motion, response, record, and controlling authorities, the Court **GRANTS** the motion its entirety.

## I.      Background

Jiea M. Rutland-Simpson ("Plaintiff") alleges in her first amended complaint that while she was employed by Defendant, she was discriminated against because she was a Black, African-American and because she resisted that discrimination.[2]  Her Title VII discrimination claims are based in large part on race/color based comments allegedly made by her district manager, Thomas Raborn ("Raborn"), on or about November 9, 2010.[3]  She also claims she was treated differently and subjected to more scrutiny than coworkers who were not in her protected class.[4]  Plaintiff also alleges that after she filed a complaint with human resources, the discriminatory conduct increased in retaliation to her opposition to the harassment.[5]  She claims

---

[1] Dkt. Nos. 24-25.
[2] Dkt. No. 3.
[3] Dkt. No. 3 at ¶¶ 4.3-4.4.
[4] Dkt. No. 3 at ¶ 4.4.
[5] Dkt. No. 3 at ¶¶ 4.6-4.8.

that the discrimination and retaliation culminated in her termination on or about March 3, 2011.[6] (The record is unclear about the date of Plaintiff's termination.  Defendant's investigation documents indicate that she was terminated on March 4, 2011.[7]   But, Defendant's answer states that March 9, 2011, was the date of termination.[8]  **For the purposes of summary judgment, the Court will treat March 4, 2012, as the termination date.**).  At a minimum, it appears that both Thomas Raborn, Plaintiff's district manager, and Jaime Preston, a human resources investigator, were the decision makers who decided to terminate Plaintiff.[9]

Defendant moved for summary judgment on both Plaintiff's Title VII race/color discrimination claims and Plaintiff's Title VII retaliation claim, Plaintiff filed a response, Defendant filed a reply, and Plaintiff filed a surreply.[10]

## II.   Analysis

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[11] Federal Rule of Civil Procedure 56 states in part:

> (c) Procedures.  (1) Supporting Factual Positions.  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:  (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[12]

---

[6] Dkt. No. 3 at ¶ 5.4.
[7] Dkt. No. 24-4 at pp. 18-19.
[8] Dkt. No. 6 at ¶ 4.7.
[9] Dkt. No. 24-4 at p. 19.
[10] Dkt. Nos. 24; 25; 29; 31; and 35.
[11] Fed. R. Civ. P. 56(a).
[12] FED. R. CIV. P. 56(c).

A.      **Plaintiff's Title VII Discrimination Claims**

Defendant moves for summary judgment on Plaintiff's Title VII race/color discrimination claims.  "Intentional discrimination can be established through either direct or circumstantial evidence."[13]  If a plaintiff "presents no direct evidence of discrimination, her claim is analyzed using the framework set forth in *McDonnell Douglas Corp. v. Green*[.]"[14]  Therefore, the Court will begin by evaluating whether this is a direct or circumstantial evidence case.

For the most part, the parties have approached this as a circumstantial evidence case. Yet, in footnote 4 of Plaintiff's surreply,[15] Plaintiff asserts that there is direct evidence of discrimination in the record but does not cite to it.  The Court notes that "[j]udges are not like pigs, hunting for truffles buried in briefs."[16]  Plaintiff's failure to specifically cite the direct evidence is reason enough for the Court to disregard her direct evidence argument.  Furthermore, the Court has found no direct evidence of discrimination in its review of the record. Specifically, the Court finds that the comments allegedly made by Raborn during a field visit on November 9, 2010,[17] are the only *potential source* of direct evidence of discrimination.

Plaintiff testified in her deposition that Raborn made the following statements/inquires: (1) Raborn wanted to know who was Mexican in a doctor's office, and Plaintiff replied that Mexicans come in all different colors.  Raborn then began telling her about a "dark skinned" doctor who ended up being Iranian.[18]  (2)  In response to Plaintiff's story about her daughter who was speaking Spanish because the babysitter was raising her, Raborn said that "[the daughter] can be African-Mexican."[19]  (3) In response to an inquiry from the staff in a doctor's office,

---

[13] Alvarado v. Texas Rangers, 492 F.3d 605, 611 (5th Cir. 2007).
[14] *Id*. (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).
[15] Dkt. No. 35 at p. 8.
[16] de la O v. Hous. Auth. of City of El Paso, Tex., 417 F.3d 495, 501 (5th Cir. 2005) (citations omitted).
[17] Dkt. No. 29 at p. 7.
[18] Dkt. No. 37-1 at p. 17.
[19] Dkt. No. 37-1 at pp. 18-19.

Raborn stated that he did not speak Spanish and that he was "a plain 'ol Georgia American boy[.]"  Raborn then started talking about how the region was mixed.  Plaintiff explained in her deposition that by "mixed" Raborn meant "Spanish people and all this."[20]  (4) Raborn allegedly called Plaintiff a "Ding Bat."[21]  The Court will now consider the legal significance of Raborn's comments.

The Fifth Circuit has endorsed a four-part test for determining whether comments are direct evidence of discrimination:

> [I]n order for comments in the workplace to provide sufficient evidence of discrimination, they must be 1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the [complained-of adverse employment decision]; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.[22]

To the Court's knowledge, the term "ding bat" has no racial connotation. The Court will not address that allegation further.  As to the comment regarding her daughter, it does not satisfy the four-part test because Plaintiff has not demonstrated that the comment was related to the Plaintiff's termination in March (or any other action of Defendant).  The remaining two comments fail for the same reason and because they are not related to the class of which Plaintiff is a member.  The Court finds that Plaintiff has failed to produce any direct evidence of discrimination.

Because Plaintiff's discrimination claims are based on circumstantial evidence, the Court will analyze them under the *McDonnell Douglas* framework.

> Under this tripartite framework, a plaintiff first must raise a genuine issue of material fact as to all four elements of a prima facie case of discrimination.  To establish a prima facie case, the plaintiff must show that '(1) she is a member of a

---

[20] Dkt. No. 37-1 at pp. 19-20.
[21] Dkt. No. 37-1 at p. 20.
[22] Rubinstein v. Adm'rs of Tulane Educ. Fund, 218 F.3d 392, 400-01 (5th Cir. 2000) (citation and quotation marks omitted).

protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated.'   Once this prima facie case is established, the employer has an opportunity to articulate a legitimate, non-discriminatory reason for the adverse employment action.   Once the employer offers evidence of such a legitimate reason, the burden shifts back to the plaintiff-employee to raise a genuine issue of material fact that this non-discriminatory reason is merely pretextual.[23]

Additionally, Plaintiff may satisfy the fourth prong of her prima facie case by demonstrating that she was replaced by someone outside her protected class.[24]

### 1.    Plaintiff's Prima Facie Case of Discrimination

Defendant does not dispute that Plaintiff was a member of a protected class, that she suffered an adverse employment action (termination), and that she was qualified for the job.[25] Therefore, the only issue remaining is whether Plaintiff has established the fourth prong of a prima facie case.   Once again, Plaintiff may satisfy the fourth prong by demonstrating that she was treated differently than others who were similarly situated **OR** that she was replaced by someone outside her protected class.

Here, Plaintiff has directed the Court to evidence that Plaintiff was replaced by someone outside Plaintiff's protected class.   Specifically, Thomas Raborn testified that Plaintiff was replaced by a white woman.[26]   Defendant admits that Plaintiff was replaced by a Hispanic female.[27]   Therefore, Plaintiff has established a prima facie case of race and color discrimination.

### 2.    Defendant's Burden of Production

Defendant argues that it had a legitimate non-discriminatory reason for firing Plaintiff. Defendant directs the Court to evidence that Plaintiff was falsifying reports.   In particular, some

---

[23] Willis v. Coca Cola Enters., Inc., 445 F.3d 413, 420 (5th Cir. 2006) (quoting Rutherford v. Harris Co., Tex., 197 F.3d 173, 184 (5th Cir. 1999) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973); Johnson v. Louisiana, 351 F.3d 616, 621 (5th Cir. 2003)).
[24] Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 404 (5th Cir. 1999).
[25] Dkt. No. 25 at pp. 17-18.
[26] Dkt. No. 35-4 at pp. 33-34.
[27] Dkt. No. 31 at p. 6 n.1.

reports indicated that she was in two places at once,[28] and others indicated a face-to-face interaction with a health care provider, Dr. Hernandez.[29] Yet Plaintiff admitted she had never had a face to face interaction with Dr. Hernandez.[30] The Court finds that Defendant has met its burden of producing a non-discriminatory reason for terminating Plaintiff. Furthermore, "[Plaintiff] does not dispute that [Defendant] has met its burden of production by alleging a legitimate, non-discriminatory business reason for her termination[.]"[31]

### 3.      Whether Defendant's Reason is Pretextual[32]

Plaintiff does contend that Defendant's reasons for terminating her are merely pretextual. "A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that [her employer's] explanation is unworthy of credence."[33] "Disparate treatment occurs where an employer treats one employee more harshly than other similarly situated employees for nearly identical conduct."[34] A plaintiff may also "attempt[] to establish pretext by showing that [the defendant]'s proffered explanation is false or unworthy of credence. The inquiry is focused on whether [the defendant]'s explanation, accurate or not, is the real reason for firing [the plaintiff]."[35] The Court will thus examine whether Plaintiff has raised a genuine issue of material fact that Defendant's non-discriminatory reason for firing Plaintiff was pretextual.

---

[28] Dkt. No. 24-4 at pp. 3 & 19.

[29] Dkt. No. 24-5 at pp. 5, 14, 24 & 49.

[30] Dkt. No. 24-1 at p. 49.

[31] Dkt. No. 29 at p. 2.

[32] Plaintiff may also satisfy this third prong of McDonnell Douglas by showing that Defendant's reason, while true, is only one reason for its decision and that another motivating factor is Plaintiff's protected status. Autry v. Fort Bend ISD, 704 F.3d 344, 347 (5th Cir. 2013). However, other than in a footnote, Plaintiff has not raised this issue.

[33] Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 220 (5th Cir. 2001) (internal quotation marks and citation omitted).

[34] Vaughn v. Woodforest Bank, 665 F.3d 632, 637 (5th Cir. 2011) (internal quotation marks and citations omitted).

[35] Id. (internal quotation marks and citations omitted).

a.      **Increased Scrutiny and Assignments After the Field Ride**

As a means of showing pretext, Plaintiff argues that after the November 9, 2010 field ride, she received increased scrutiny and work assignments.[36]

After sifting through Plaintiff's response and surreply, it appears that the "increased scrutiny" Plaintiff is referring to is Raborn's investigation of Plaintiff's compliance with Defendant's policies and his criticism of her sales.[37]  The record makes clear that Defendant investigated several issues including discrepancies in Plaintiff's expense reports, reports which indicated Plaintiff was in two places at once, and reports that indicated she was making personal contact with a doctor (whom she admitted she did not see).[38]  Here, Plaintiff has presented no evidence that she received more scrutiny than other similarly situated employees or evidence that these investigations were intended to harass Plaintiff.  Thus, the mere fact that these investigations occurred is not evidence of pretext.  This is especially true in the absence of any evidence of other similarly situated employees.

As to Raborn's criticism of Plaintiff's sales,[39] Plaintiff claims it was particularly surprising because she had "won awards and received other recognition for her sales."[40]  Plaintiff specifically relies on a 2010 Performance Management Review as evidence of her good performance.[41]  After reviewing the performance review in its entirety, it is clear to the Court that Plaintiff "cherry-picked" a few positive elements from the review and completely overlooked the negative aspects.  For example, the review contains negative content including: "As we discussed, this is the 2nd selling year in a row of finishing in the bottom 1/3 of the nation

---

[36] Dkt. No. 35 at p. 33.
[37] Dkt. No. 29 at pp. 3, 8-12; Dkt. No. 35 at p. 33.
[38] Dkt. No. 24-4 at pp. 10-21.
[39] Dkt. No. 37-1 at pp. 20, 25-27.
[40] Dkt. No. 29 at p. 8.
[41] Dkt. No. 29 at p. 8.

in sales performance."[42]   Furthermore, contrary to Plaintiff's representation, she was not recommended for a raise, but merely found to be eligible for consideration for a raise.[43] Furthermore, the 2009 evaluation shows that Plaintiff was put on a Sample Accountability Violation notice, was on an Action Plan, and was admonished to "fully embrace and manage [her] administrative tasks."[44]   Even the 2008 evaluation noted that Plaintiff should "work to enhance [her] administrative skills as well as her business acumen skills."[45]   Therefore, the Court rejects Plaintiff's suggestion that Raborn's criticism of her was completely out of line with her performance reviews.   To be clear, a supervisor may simultaneously recognize positive performance, but may still insist on improvement.   In light of the evidence of past performance issues and absent evidence that similarly situated employees were treated differently, Plaintiff has not demonstrated that Raborn's criticism of her suggests pretext.

Additionally, Plaintiff claims that she was given increased work assignments.  She stated that on November 17, 2010, Raborn assigned her "5 last minute physician speaker programs."[46] But Plaintiff has not demonstrated that she was treated differently than similarly situated salespeople.  Notably, Nikki Di Liddo's testimony that she had not seen such an assignment before does not demonstrate that Plaintiff was treated differently than similarly situated salespeople.[47]  The additional speaker assignments are not evidence of pretext.

In Plaintiff's response, she also complains that she was required to revise her territory plan when other sales representatives were not required to make revisions or even make a territory plan at all.[48]  However, Plaintiff has not directed the Court to evidence that supports this

---

[42] Dkt. No. 35-7 at p. 6.
[43] Dkt. No. 35-7 at p. 6.
[44] Dkt. No. 35-7 at p. 4
[45] Dkt. No.  35-7 at p. 2
[46] Dkt. No. 29 at p. 8.
[47] Dkt. No. 35-8 at p. 3.
[48] Dkt. No. 29 at p. 9.

claim nor has she presented evidence that she was treated differently than a similarly situated employee. Therefore, the Court finds that Raborn's handling of Plaintiff's territory plan is not evidence of pretext.

**b.     Investigation Surrounding Calls on Dr. Hernandez**

Plaintiff also asserts that Defendant's handling of its investigation surrounding calls on Dr. Hernandez is evidence of pretext. In particular, the evidence establishes that Plaintiff documented calls to Dr. Hernandez as being face-to-face when in fact they were not, and Plaintiff admitted as much. The evidence also establishes that Defendant investigated three other employees who documented face-to-face contact with Dr. Hernandez. Defendant found that the three other employees had face-to-face contact. Nonetheless, Plaintiff asserts that she was fired for improperly recording calls on Dr. Hernandez when the three other employees were not fired.[49] It is clear from reviewing the record that, unlike Plaintiff who admitted that she never had face-to-face contact with Dr. Hernandez, Defendant reasonably determined that the other employees were actually seeing Dr. Hernandez.[50]

Plaintiff offers an affidavit from Dr. Hernandez, wherein he states that he had not met with any of Defendant's employees in over four years.[51] Thus, Plaintiff asserts that the three other employees did not in fact meet fact-to face with Dr. Hernandez yet those employees did not receive any discipline. This affidavit was executed nearly two years after Defendant terminated Plaintiff,[52] and there is no evidence that Defendant was cognizant of this information at the time of Plaintiff's termination. Stated differently, at the time of the events in question, Plaintiff was in a different situation having admitted she had no face-to-face contact despite documenting her

---

[49] Dkt. No. 29 at pp. 15-16.
[50] Dkt. No. 24-4 at pp. 3-4.
[51] Dkt. No. 29-12.
[52] Dkt. No. 29-12.

reports as such whereas the three other employees asserted they had face-to-face contact as noted in their reports.  It is not unreasonable for an employer to cease an investigation in light of an employee's own admission of the facts necessary to establish that employee's wrongdoing. While the better practice might have been to contact Dr. Hernandez, the Fifth Circuit has stated, "[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."[53]   Plaintiff's evidence does suggest that Defendant erroneously determined that the other salespeople were seeing Dr. Hernandez, but she has not produced evidence that at the time those determinations were unreasonable.  Therefore, even assuming that Defendant reached an erroneous conclusion in its investigation, such conclusion is not evidence of pretext.

Second, Plaintiff argues that Defendant's failure to follow its own policy when it investigated her and the other sales people who had been reporting calls on Dr. Hernandez is evidence of pretext.[54]  Although a departure from an internal company policy may support an inference of pretext,[55] the Court is unwilling to find that any departure from internal policy is sufficient to support a finding of pretext.

Plaintiff's argument that Defendant did not follow its own policies is based in part on the deposition of Jaime Preston,[56] a human resources representative and investigator.[57]

Preston stated:

"It is standard protocol that if you believe someone may have falsified calls, that you look at their – the calls that they have entered in the system and you call offices to ensure that those physicians were present that day."[58]

---

[53] Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995).
[54] Dkt. No. 35 at p. 23.
[55] Machinchick v. PB Power, Inc., 398 F.3d 345, 354 & n.29 (5th Cir. 2005).
[56] Dkt. No. 35 at p. 4.
[57] Dkt. No. 24-4 at p. 2.
[58] Dkt. No. 35-5 at p. 12.

"I did not say that you had to call their office. I said the standard protocol is to call offices as you look at data."[59]

It is Plaintiff's position that Defendant had a policy which required doctors to be contacted if call falsification was suspected. Furthermore, it is undisputed that Defendant stopped its investigation of Plaintiff and the three other employees who were suspected of falsifying calls on Dr. Hernandez without contacting his office. But, the Court is not persuaded by Plaintiff's argument.

Even assuming there was a standard protocol which required a doctor's office to be called when call falsification was suspected; this is not a case where no investigation was conducted. On the contrary, Defendant investigated all four employees, but stopped short of contacting the doctor's office. Thus, the deviation from the allegedly official procedures in this case is minor. Furthermore, the facts of this case reveal that the investigation was stopped because Defendant reasonably believed that it had determined what actually happened. The Court does not interpret the law as requiring an employer to blindly follow its own investigation procedures if a reasonable investigator would have terminated the investigation prior to completing those procedures. The evidence demonstrates that Defendant terminated its investigation without calling Dr. Hernandez' office only after it appeared that the relevant fact issues had been resolved. Thus, even if Defendant technically departed from its investigation procedures, such departure it is not evidence of pretext.

c.    **Whether Plaintiff Violated Sales Call Policy**

Plaintiff also challenges Defendant's position that she violated sales call policy. First, Plaintiff argues that she did not actually violate the sales call policy by failing to daily document

---

[59] Dkt. No. 35-5 at p. 15.

her calls.[60]   Specifically, Plaintiff asserts that sales call documentation surrounding Dr. Hernandez demonstrates that "not one of the [sales representatives] entered the sales calls on the same date."[61]   But even assuming that the other salespeople did not document their calls daily, Plaintiff has not directed the Court to evidence that she was terminated for failing to daily document her calls.  Therefore, the Court need not resolve whether the sales call policy required the daily documentation of calls because that fact is not material to the outcome in this case.

Second, Plaintiff claims that there is no evidence that Plaintiff "falsified calls" under Defendant's U.S. Policy on Documenting Sales calls.[62]   The sales call policy states in pertinent part:

> A sales call is a face-to-face interaction that meets both of the following criteria:
> - Is between a Lilly sales representative and appropriate HCP customer . . . .
>
> - Includes a dialogue . . . .[63]

Furthermore, the policy states that "[f]or each sales call, the sales representative must accurately document the interaction . . . ."[64]   The policy clearly defines a sales call as being face-to-face and requires that it be documented "accurately."  "Accurate" is defined as "free from error or defect; consistent with a standard, rule, or model; precise; exact."[65]

It is undisputed that Plaintiff documented sales calls to Dr Hernandez (which by definition are face-to-face calls to include a dialogue) which in fact did not occur.  Nonetheless, it is Plaintiff's position that she made all the sales calls she recorded, but that she inputted the wrong dates for some calls.[66]   She further argues that such improper documentation is not a

---

[60] Dkt. No. 35 at pp. 11-12.
[61] Dkt. No. 35 at pp. 11-12.
[62] Dkt. No. 29 at p. 18.
[63] Dkt. No. 35-3 at p. 2.
[64] Dkt. No. 35-3 at p. 3.
[65] RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 14 (2d ed. 2001).
[66] Dkt. No. 29 at p. 12.

terminable offense.  In support of this opinion, she points to Raborn's deposition where he stated that he was not aware of another employee that had been terminated for failing to document calls appropriately.[67]   Raborn's deposition is unavailing to Plaintiff.  The cited testimony does not demonstrate that any other employee committed the same infraction.   It only indicates that Raborn was not personally aware of another employee who had been terminated for improperly documenting calls.  Plaintiff does point to a statement by Ryan Robinson, one of Defendant's investigators,[68] who acknowledged that it was possible that there could be a violation of the sales call policy that did not amount to call falsification and would result in less severe discipline than termination.[69]  But, while Robison admitted that it was *possible* that there were non-terminable violations of the sales call policy, he did not state that Plaintiff's conduct fell within that category.   More importantly, Robinson testified that if an investigation confirms call falsification, it usually results in termination.[70]  Furthermore, the investigation notes indicate that Plaintiff was terminated for improperly documenting calls on "numerous occasions."[71]

Ultimately, Plaintiff has failed to provide evidence that she did not "falsify calls" or that her improper documentation of calls was a non-terminable offense.  It is clear that she does not believe that her conduct constituted call falsification, but it was Defendant's policy that calls be accurately documented and classifying improperly documented calls as call falsification does not demonstrate pretext.  The Court will not second-guess whether treating improperly documented calls as falsified calls is a good policy.  The same is true of Plaintiff's argument that Defendant did not clearly explain to Plaintiff that improperly documenting calls could be treated as a

---

[67] Dkt. No. 37-2 at pp. 6-7.
[68] Dkt. No. 35-17 at p. 4.
[69] Dkt. No. 35-17 at pp. 6-7.
[70] Dkt. No. 35-17 at p. 6.
[71] Dkt. No. 24-4 at p. 20.

terminable offense.[72]  Equally unpersuasive is Plaintiff's unsupported allegation that Defendant's misconduct policy contains a mens rea requirement.  On the contrary, Defendant points to evidence which indicates that there was no such distinction.[73]

Plaintiff has not demonstrated that classifying improperly documented calls as falsified calls was at odds with Defendant's internal policies or that Plaintiff was treated differently than similarly situated employees.  Therefore, the Court finds that Defendant's treatment of Plaintiff's improperly documented calls is not evidence of pretext.

**d.     Other Failures to Follow Policy**

Plaintiff also attempts to show pretext by directing the Court to other alleged failures of Defendant to follow its own internal policies in its dealings with Plaintiff.

**i.     Handling of Plaintiff's December 1, 2010 Complaint**

First, Plaintiff alleges that Defendant failed to follow its own policies after she reported Raborn's comments on December 1, 2010.[74]  Plaintiff argues that her complaint was not investigated "promptly" as required by the policy because there was approximately a month-and-a-half delay after Plaintiff made her report before she was contacted about her complaint.  Furthermore, she asserts that Defendant did not contact Raborn as required by the policy.[75]  Finally, she asserts that during a follow-up call, Michael Houze, who worked in human resources, was rude to her and blamed everything on her in one of their calls.[76]  The Court is unpersuaded by these arguments.

Here, Plaintiff has failed to articulate how Defendant's handling of Plaintiff's discrimination complaint suggests that Defendant's proffered reasons for terminating Plaintiff

---

[72] Dkt. No. 35 at pp. 11-14.
[73] Dkt. No. 31-2 at p. 3.
[74] Dkt. No. 35 at pp. 27-28.
[75] Dkt. No. 35 at p. 28.
[76] Dkt. No. 35 at p. 28.

were pretextual. Instead, Plaintiff appears to believe that any departure from internal procedures/policies is automatically evidence of pretext. But, not all departures from internal policy are evidence of pretext. **An employee must do more than simply point out every deviation from internal procedures/policies she encountered during her employment.** To be evidence of pretext, the departures from internal procedures/policies must provide a reasonable basis for a fact finder to disbelieve the legitimate reason the Defendant has articulated for its adverse employment action. In this case, the causal connection to the termination of Plaintiff's employment is not evident, and Plaintiff has not articulated the causal connection. Therefore, the Court finds that Defendant's handling of Plaintiff's December 1, 2010 complaint is not evidence of pretext.

### ii.    Defendant's Investigation of Improperly Documented Calls

Similar to her argument regarding the inadequacy of Defendant's investigation of the Dr. Hernandez issue, Plaintiff argues that Defendant failed to follow its own internal policies when it was investigating reports that indicated she was in two places at once.[77] Again, Plaintiff claims that neither Raborn nor anyone else employed by Defendant contacted the doctors.[78] While Preston did testify that it was standard protocol to call physician's offices to investigate alleged falsified calls, Preston specifically denied that the same was policy.[79] Absent evidence that Defendant was required to investigate Plaintiff's falsification in a certain manner, the failure to call the physicians involved does not constitute pretext. Furthermore, when asked why she entered calls on days she was out of the territory, Plaintiff said that "it was possibly a mistake or something" or computer problems.[80] Notably, Plaintiff did not dispute that the information was

---

[77] Dkt. No. 35 at p 21.
[78] Dkt. No. 35 at pp. 7 & 21.
[79] Dkt. No. 35-5 at p. 15.
[80] Dkt. No. 35-2 at pp. 55-56.

not entered accurately.  In light of this answer, it was not unreasonable for Defendant to end its investigation.

**e.      Raborn's Comments to Plaintiff**

Plaintiff also asserts that Raborn's November 2010 comments are evidence of pretext.[81] The Court already determined that those comments are not *direct evidence* of discrimination. Now the Court will consider whether the comments are *circumstantial evidence* of discrimination.

> Where a plaintiff offers remarks as circumstantial evidence alongside other alleged discriminatory conduct, however, we apply a more flexible two-part test. In that circumstance, a plaintiff need only show (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker.[82]

Because the Court set forth the alleged comment above, it will not repeat them here. After reviewing the alleged comments, none of them satisfy the two-part test.  Although the comments reference race and color, none of them reveals a discriminatory animus.  Even the comments that referenced African-Americans and people with dark skin were not negative about those groups.  Therefore, the Court finds that Plaintiff's allegations regarding Raborn's November 9, 2010 comments are not evidence of pretext.

**f.      Pretext Conclusion**

After considering Plaintiff's arguments and evidence that Defendant's proffered reasons for terminating Plaintiff were pretextual, the Court finds that Plaintiff has failed to produce evidence of pretext.  Therefore, the Court **GRANTS** summary judgment for Defendant on Plaintiff's Title VII race/color discrimination claims.

---

[81] Dkt. No. 35 at p. 33.
[82] Reed v. Neopost USA, Inc., 701 F.3d 434, 441 (5th Cir. 2012) (citing Russell v. McKinney Hosp. Venture, 235 F.3d 219, 226 (5th Cir.2000)).

## B.     Plaintiff's Title VII Retaliation Claim

Defendant also moves for summary judgment on Plaintiff's Title VII retaliation claim. Plaintiff's briefing contains nothing more than a conclusory assertion in a footnote that she has direct evidence of retaliation.[83]   Because Plaintiff has not pointed the Court to direct evidence of retaliation, the Court will once again use the burden shifting framework to evaluate Plaintiff's circumstantial evidence of discrimination.   It is initially Plaintiff's burden to establish a prima facie case.   Then, "the burden shifts to the employer to provide a legitimate, non-retaliatory reason for the adverse employment action."[84]   Finally, "[i]f the defendant presents evidence that supports that it acted properly, the fact-finder must decide whether retaliation was the but-for cause for the employer's action."[85]   "To defeat a motion for summary judgment, a plaintiff must demonstrate a conflict in substantial evidence on [the] ultimate issue of but for causation."[86]

## 1.     Plaintiff's Prima Facie Case of Retaliation

The Fifth Circuit has set forth the elements of a prima facie case of retaliation:

> To establish a prima facie case of retaliation, the plaintiff must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action.[87]

Here, it is clear that there was an adverse employment action because Plaintiff was terminated. Additionally, Defendant does not dispute for the purposes of summary judgment that Plaintiff's calls to the human resources hotline on December 1, 2010 and March 3, 2011 were protected activities.   Therefore, the main issue is whether there is a causal connection between Plaintiff's

---

[83] Dkt. No. 35 at p. 28 n.21.
[84] Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 657 (5th Cir. 2012) (internal quotation marks and citations omitted).
[85] Id. at 657 (citation omitted).
[86] Id. at 658. (internal quotation marks and citation omitted).
[87] McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007).

protected activity and Plaintiff's termination.  But before the Court reaches that issue, it will first examine whether Plaintiff engaged in protected activities beyond her calls to human resources.

First, there is the issue of whether Plaintiff's comments to a co-worker in November 2010, are protected activity.  Plaintiff testified that she called Jennie Anthony, a previous counterpart, and told her about the November 2010 field ride, including Raborn's comments.[88] After reviewing Plaintiff's description of the call, the Court finds that it was not protected activity.  Specifically, there is no indication that Plaintiff thought she was either reporting discriminatory behavior or resisting discriminatory behavior.  On the contrary, she was venting to a friend who was not in management or part of human resources.  Furthermore, the Court finds that Plaintiff's testimony indicates that she did not expect Jennie Anthony to pass along the information.  Therefore, the Court finds that Plaintiff's call to Jennie Anthony was not protected activity.

Although Plaintiff's communication with Jennie Anthony was not protected activity, Raborn testified that either Jennie or another employee told him that Plaintiff was concerned that Raborn was making racial comments.[89]  Raborn further testified that he called human resources and explained the situation, but he was told by human resources not to proactively bring it up because it might have been a miscommunication.[90]  Despite Raborn's knowledge and his communication with Human Resources, the Court finds that Plaintiff's communication to Jennie Anthony did not thereby convert to protected activity.

Second, Plaintiff testified that she reported her concerns about Raborn to Don Mason, a compliance officer employed by Defendant, on March 3, 2011, the day before she was fired.[91]

---

[88] Dkt. No. 24-1 at pp. 31-32.
[89] Dkt. No. 24-6 at pp. 12-13.
[90] Dkt. No. 24-6 at p. 13.
[91] Dkt. No. 35-2 at pp. 58-59; Dkt. No. 35-15.

The communication with Mason too is protected activity.  However, Plaintiff has not directed the Court to evidence that anyone other than Mason was aware of that discussion before Plaintiff was terminated.  Therefore, her conversation with Don Mason does not support Plaintiff's prima facie case.

After talking to Don Mason, but before she was fired, Plaintiff called the compliance hotline and made a complaint.[92]  This is the March 3rd call which the Court was determined is protected activity.  However, similar to her conversation with Don Mason, there is no evidence that any decision maker was aware of this complaint which occurred within a day of her termination.  This call does not support Plaintiff's prima facie case.

Turning to the third prong of Plaintiff's prima facie case, the Court must now evaluate whether there is a causal connection between Plaintiff's protected activity pertaining to the December 1, 2010 complaint and her termination.  There is evidence that after Plaintiff was fired, Don Mason raised the issue of Plaintiff's concerns with Raborn, and Raborn indicated that he was aware of the issue.  Specifically, Plaintiff produced notes from Defendant's human resources department which include the following sentence: "Don [Mason] said that he mentioned the racist remarks to DSM Raborn and the DSM said he had already talked to HR about that."[93]  Defendant argues that Raborn was referencing his own contact with human resources which Raborn initiated after he was told that Plaintiff was concerned about the November field ride.[94]  Although, Raborn stated in an affidavit that he was unaware of the human resources complaints before Plaintiff was terminated,[95] the Court finds that Raborn's knowledge as documented in the notes of his conversation with Mason, combined with his direct

---

[92] Dkt. No. 35-2 at pp. 58-60; Dkt. No. 35-15.
[93] Dkt. No. 35-14 at p. 2.
[94] Dkt. No. 31 at pp. 23-24.
[95] Dkt. No. 24-3 at p. 4.

involvement in the termination are sufficient to establish, for summary judgment purposes, a causal connection.

Because Defendant concedes the first two points of a prima facie case of retaliation, and there is a fact issue regarding the causality prong, the Court finds that Plaintiff has established a prima facie case of retaliation.

### 2.       Defendant's Burden of Production

Above, the Court explained that Defendant had met its burden of producing a non-discriminatory reason for terminating Plaintiff's employment.  For the same reasons, the Court finds that Defendant has met its burden of producing a non-retaliatory reason for terminating Defendant's employment.

### 3.       Whether Plaintiff Has Produced Evidence of "But-For" Causation

Once Defendant has offered a legitimate non-discriminatory reason for the termination, Plaintiff may defeat summary judgment by offering evidence that "but-for" her protected activity she would not have been terminated.  Plaintiff may meet her burden "show[ing] that the proffered reason was a pretext or that the employer acted with mixed motives."[96]  Crucially, under both methods, Plaintiff must show "but-for" causation.[97]

The Court has already addressed many of Plaintiff's arguments that Defendant's proffered reasons for terminating her are pretextual.  Above, the Court found no evidence of pretext related to Plaintiff's discrimination claim.  Now the Court will consider evidence of "but-for" causation that is only applicable to Plaintiff's retaliation case.

---

[96] Gibson v. Verizon Servs. Org., Inc., 2012 WL 5914256, *5 (5th Cir. Nov. 15, 2012) (citation omitted).
[97] *Cf.,* Nunley v. City of Waco, 440 Fed. App'x 275, 277, 280-81 (5th Cir. 2011).

Plaintiff argues that there is evidence that the decision makers knew of her protected activity and that she was fired soon after she engaged in protected activity.[98]  The Fifth Circuit has stated:

> "[T]emporal proximity alone, when very close, can in some instances establish a *prima facie case* of retaliation.  But we affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation.  Such a rule would unnecessarily tie the hands of employers.[99]

Thus, even assuming that the decision makers in this case were aware of Plaintiff's protected activity and that her protected activity was very close in time to her termination, that is not sufficient for Plaintiff to survive summary judgment.  Rather, Plaintiff must present substantial evidence on the "but for" ultimate issue.[100]  "Evidence is 'substantial' if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions."[101]  Here, Plaintiff has failed to offer any evidence, beyond the knowledge and proximity, to support the ultimate issue.  Therefore, the Court **GRANTS** summary judgment for Defendant on Plaintiff's retaliation claim.

---

[98] Dkt. No. 35 at pp. 34-40.
[99] Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 808 (5th Cir. 2007) (citation omitted).
[100] Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 657 (5th Cir. 2012).
[101] *Id.* (internal citation omitted).

**III.      Conclusion**

After considering the motion, response, reply, surreply, record and relevant authorities, the Court **GRANTS** Defendant's motion for summary judgment in its entirety.  Specifically, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiff's Title VII race/color discrimination claims.  Furthermore, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiff's Title VII retaliation claim.

IT IS SO ORDERED.

DONE this 10th day of April, 2013, in McAllen, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE